UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

IN RE CINQUE TERRE FINANCIAL
GROUP LIMITED,

        Debtor.

-------------------------------------------------------

RICHARD ROTHENBERG,

        Appellant,

  -v-                                               Nos.   16 CV 4774-LTS
                                                                         16 CV 7700-LTS
CINQUE TERRE FINANCIAL GROUP,
LIMITED,

        Appellee.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        Appellant Richard Rothenberg appeals from two orders of the United States Bankruptcy Court for the Southern District of New York entered by United States Bankruptcy Judge James L. Garrity, Jr., in a Chapter 15 bankruptcy proceeding captioned In re Cinque Terre Financial Group Limited, No. 16-11086 (JLG).  On consent of the parties, the appeals are hereby consolidated for all purposes under the lead docket number 16 CV 4774.

        The Court has jurisdiction of these appeals pursuant to 28 U.S.C. §§ 158 and 1331.  The Court heard oral argument on the appeals at a joint conference held in the above-captioned appeals on November 10, 2016.  The Court has carefully considered the submissions of both parties, as well as the arguments of counsel.

        For the reasons stated herein, the orders of the Bankruptcy Court are affirmed in

part and reversed in part, and the matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

## BACKGROUND

Cinque Terre Financial Group, Limited ("CTFG") is a British Virgin Islands ("BVI") company that was placed in liquidation in the BVI as of April 11, 2016.  (Docket entry no. 5 in 16 CV 4774, Appendix to Brief of Appellant Richard Rothenberg ("App'x"), at 49-50.) Stuart Mackellar, in his capacity as the duly appointed liquidator of CTFG (the "Liquidator"), commenced the underlying Chapter 15 proceeding for recognition of CTFG's BVI liquidation proceedings in this District on April 27, 2016.

Rothenberg was the chief financial officer ("CFO") of CTFG prior to its liquidation.  (Id. at 50.)  On April 27, 2016, the Liquidator applied, ex parte, for an order of the Bankruptcy Court that would, inter alia, compel Rothenberg to preserve certain records and produce certain documents to the Liquidator.  (Id. at 20-21.)  In that application, the Liquidator stated that Rothenberg "was" the CFO of CTFG and described him as part of CTFG's "former management."  (Id. at 22.)

The Bankruptcy Court granted the Liquidator's application by entering an order on April 29, 2016 (the "April Order").  (Id. at 38-43.)  The April Order directed, inter alia, that "Richard Rothenberg, the chief financial officer of [CTFG]," preserve and produce certain CTFG-related documents and information to the Liquidator, and authorized the Liquidator to issue a subpoena to Rothenberg.  (Id. at 41.)

The Liquidator served a subpoena on Rothenberg on or about May 2, 2016.  (Id. at 69 (the "Subpoena").)  The Subpoena was addressed to Rothenberg, without specifying his

title or relationship to CTFG, and called for production of, inter alia, all documents in Rothenberg's "possession, custody, or control" that concern, relate, or pertain to CTFG. (Id. at 69, 74.)

On May 10, 2016, Rothenberg moved to quash the Subpoena and vacate, in part, the April Order. (Id. at 46.) In his moving papers, Rothenberg argued that he was no longer the CFO of CTFG at the time that the April Order and Subpoena were served on him, and asserted his Fifth Amendment privilege against self-incrimination. (Id. at 50-55.) In response to the motion, the Liquidator argued that Rothenberg remained the CFO of CTFG, and could not assert a Fifth Amendment privilege as a basis to quash the Subpoena because the Subpoena only directed Rothenberg to produce documents he held in his representative capacity as CFO. (Id. at 76, 78-79.)

On May 19, 2016, Rothenberg sent an email to the Liquidator, stating that Rothenberg believed he had been terminated by CTFG as of April 27, 2016 (when the Liquidator moved for the ex parte order). Rothenberg stated in the email that, in light of the Liquidator's more recent representations that Rothenberg remained CFO, he was resigning as CFO of CTFG. (Id. at 127-28.)

On May 24, 2016, the Bankruptcy Court issued a Memorandum Decision on Rothenberg's motion to quash. (Id. at 210.) The Bankruptcy Court found that, as of the dates of the April Order and the Subpoena, Rothenberg remained the CFO of CTFG. (Id. at 226.) Although the Bankruptcy Court noted the existence of Rothenberg's May 19th resignation email, the Court made no determination as to whether that resignation was effective. (Id. at 227.)

The Bankruptcy Court concluded that, as the CFO of CTFG at the time the April Order and the Subpoena were issued, Rothenberg could not assert a Fifth Amendment privilege

with respect to documents and records belonging to CTFG, because he acted only in a representative capacity as to such documents in his possession. (Id. at 227-28.) However, the Bankruptcy Court noted that both the April Order and the Subpoena were broad enough to cover information beyond documents and information belonging to CTFG, and accordingly held that the April Order and Subpoena should be modified, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A) (as made applicable to bankruptcy cases by Federal Rule of Bankruptcy Procedure 9016), to limit Rothenberg's required production to material Rothenberg possessed in a representative capacity. (Id. at 228-29.) In light of the modification of the April Order and Subpoena, the Bankruptcy Court did not address Rothenberg's privilege argument. (Id. at 228.)

On June 3, 2016, the Bankruptcy Court entered an Order (the "June Order") adopting these conclusions and modifying the April Order and the Subpoena accordingly. (Id. at 237-38.) On June 8, 2016, Rothenberg noticed an appeal from the June Order to this Court, which appeal was docketed as case number 16 CV 4774.

Rothenberg did not comply with the June Order or the modified Subpoena, and on September 15, 2016, the Bankruptcy Court entered a Consent Order of Contempt against Rothenberg, holding him in civil contempt and fining him (1) $2,500 in attorneys' fees and costs incurred by the Liquidator, plus (2) $100 per day of non-compliance. (Docket entry no. 1 in 16 CV 7700, at ECF p. 6-9 (the "September Order").[1]) On September 30, 2016, Rothenberg noticed an appeal from the September Order to this Court, which appeal was docketed as case number 16 CV 7700. The parties thereafter jointly agreed, as to the appeal of the September Order, to rely

---

[1] Although the order is titled Consent Order and was agreed to by both parties, the parties have agreed on this appeal that Rothenberg did not waive his right to challenge the fines imposed by the Consent Order. (See Transcript of November 10, 2016, Conference ("Tr."), at 17:25-18:10.)

on their briefing in 16 CV 4774 (docket entry no. 5 in 16 CV 7700), which arrangement was approved by this Court (docket entry no. 6 in 16 CV 7700).

The Court held oral argument on the appeals from both the June Order and the September Order on November 10, 2016, and the parties agreed that the matter was fully submitted at the conclusion of oral argument. (Tr. at 35:16-19.)

## DISCUSSION

Federal district courts have jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in proceedings that have been referred to the bankruptcy courts. 28 U.S.C. § 158. The September Order, which imposed a fixed fine on Rothenberg in connection with the holding of civil contempt, is a final order. The Court deems Rothenberg's appeal from the June Order to be a motion for leave to file an interlocutory appeal, and grants that motion, pursuant to Federal Rule of Bankruptcy Procedure 8004(d).

The standard of review in a bankruptcy appeal is plenary. See In re MarketXT Holdings Corp., 346 Fed. App'x 744, 745 (2d Cir. 2009). A district court "review[s] the bankruptcy court decision independently, accepting its factual findings unless clearly erroneous but reviewing its conclusions of law de novo." Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006) (quoting In re Enron Corp., 419 F.3d 115, 124 (2d Cir. 2005)); see also In re Santiago-Monteverde, 512 B.R. 432, 436 (S.D.N.Y. 2014) ("On appeal, the court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree or remand with instructions for further proceedings") (internal quotation marks and citation omitted). A bankruptcy court's orders relating to pure discovery issues are reviewed for abuse of discretion. American Express Co. v.Goetz, 515 F.3d 159, 159 (2d Cir. 2008).

The Fifth Amendment provides in relevant part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V.  The Fifth Amendment does not, in general, offer a privilege against compliance with a subpoena for pre-existing records because the creation of the records was not compelled.  See <u>United States v. Doe</u>, 465 U.S. 605, 610 (1984).  However, if the mere act of producing records involves communicative aspects, compelling that communication may implicate the Fifth Amendment privilege.  <u>Fisher v. United States</u>, 425 U.S. 391, 410 (1976).  This is because such production may have "communicative aspects of its own, wholly aside from the contents of the papers produced."  <u>Id.</u>  Where the act of producing documents inherently involves communicating information that is "both testimonial and incriminating," the Fifth Amendment's protections may be implicated.  <u>Id.</u> (internal quotation marks omitted).  The United States Court of Appeals for the Second Circuit has accordingly explained that an 'act-of-production privilege' may be asserted where the subpoenaed person's act of production is, in and of itself, (1) compelled, (2) testimonial, and (3) incriminating.  See <u>In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999</u>, 191 F.3d 173, 178 (2d Cir.1999) (hereinafter "<u>Three Grand Jury Subpoenas</u>").

Corporations, however, do not have the privilege against self-incrimination enshrined in the Fifth Amendment.  See <u>Bellis v. United States</u>, 417 U.S. 85, 87-88 (1974).  Accordingly, neither a corporation nor its agents or officers may assert the Fifth Amendment privilege or the act-of-production privilege against disclosing corporate records in response to a subpoena, a doctrine known as the collective entity rule.  See <u>Braswell v. United States</u>, 487 U.S. 99, 104-10 (1988); <u>Bellis</u>, 417 U.S. at 90.  Prior to the decision in <u>Braswell</u>, the Second Circuit had held in a case commonly referred to as <u>Saxon Industries</u> that "[o]nce the officer leaves the company's employ, . . . he no longer acts as a corporate representative but functions in an

individual capacity in his possession of corporate records." In re Grand Jury Subpoenas Duces Tecum Dated June 13, 1983 and June 22, 1983, 722 F.2d 981, 986-87 (2d Cir.1983) (hereinafter "Saxon Industries").  In Three Grand Jury Subpoenas, the Second Circuit reaffirmed the continuing validity of Saxon Industries after Braswell, holding that former employees of a corporation may claim the act-of-production privilege as to corporate documents that remain in their possession after they leave the corporation's employ.  191 F.3d at 181.

Here, Rothenberg claims that the June Order and the Contempt Order must be overturned because he was not acting in a representative capacity at relevant times, and that the Subpoena never properly called for the production of CTFG information Rothenberg held in his capacity as corporate custodian.

In dicta, the Three Grand Jury Subpoenas Court discussed whether an individual who was subpoenaed in his representative capacity and thereafter resigned could assert the Fifth Amendment privilege.  Noting that there were "few reported incidents of employees stealing corporate documents and leaving a company's employ before or shortly after being served with a subpoena to produce such documents," the Second Circuit suggested that the appropriate responses to such conduct would be civil contempt sanctions for the period between receipt of the subpoena and resignation, an obstruction of justice prosecution in cases involving criminal activities, or a replevin action by the corporation in civil cases.  Three Grand Jury Subpoenas, 191 F.3d at 182-83 & n.4.  Application of these principles can be complex, particularly where an individual may hold responsive information in more than one capacity.

The first issue presented on appeal is whether the Bankruptcy Court erred in determining that Rothenberg was a corporate custodian of CTFG's information as of the dates on which the April Order was issued and the Subpoena was served.  The Bankruptcy Court found as

a fact that Rothenberg remained the CFO of CTFG at the time he was served with the Subpoena on May 2, 2016.  This finding was supported by evidence in the record, and was not clearly erroneous.  In light of that finding of fact, the Bankruptcy Court was correct to conclude that, at the time Rothenberg received the Subpoena, he held CTFG's documents in a representative capacity as a corporate officer.

The second issue presented on appeal is whether the April Order and Subpoena, as originally served, called for the production of CTFG's information held by Rothenberg in any capacity, including in a representative capacity, such that it was proper for the Bankruptcy Court to modify them by limiting them to compel only production of company information held in such capacity, rather than quashing the Subpoena in its entirety and requiring service of a new subpoena.

In support of his argument that the Bankruptcy Court was required to quash the Subpoena, Rothenberg relies principally on Securities and Exchange Commission v. Forster, 147 F. Supp. 3d 223 (S.D.N.Y. 2015), in which the Court quashed a subpoena as overbroad and insufficiently particularized insofar as the Securities and Exchange Commission ("SEC") sought to require the respondent witness to identify and produce categories of documents belonging to his companies.  The Forster Court noted the inapplicability of the act-of-production doctrine to compelled production by corporate custodians, and concluded that the capacity in which a witness is served is therefore legally important.  Id. at 231.

The Forster Court did not, however, specifically hold that a subpoena served on an individual who may be in possession of material in multiple capacities is void unless it specifies each such capacity, and this Court finds the decision unpersuasive to the extent it might be construed to suggest such a rule.  The Subpoena here called for Rothenberg to produce all

information in his possession, custody, or control. Information relating to CTFG was explicitly referenced in the April Order and the Subpoena. Requiring a party seeking discovery to identify the specific capacity in which each item of information is sought in order to validly serve a subpoena in the first instance would place an unreasonable burden on the requester, and is inconsistent with Federal Rule of Civil Procedure 45, which permits witnesses to raise objections and puts the burden of establishing the applicability of a privilege on the witness. Fed. R. Civ. P. 45(d)(3)(A)(iii) & (e)(2)(A). Once raised, the act-of-production privilege may pose an insuperable barrier to obtaining discovery from a witness who would be required personally to engage in analytical processes to distinguish custodial information from material held in a personal capacity, but the potential for a difficult privilege issue to arise does not make a subpoena addressed to the individual invalid insofar as it may seek information the individual holds as a custodian rather than as an individual.

The April Order and Subpoena here called for material in Rothenberg's possession, custody, and control, and so on their face sought more than whatever information Rothenberg held in his personal capacity. The Bankruptcy Court, as the issuing authority, had the power to modify both the April Order and the Subpoena, and did not abuse its discretion in doing so.

The final issue presented on appeal is whether Rothenberg's May 19, 2016, resignation email affected the capacity in with Rothenberg held, and continues to hold, CTFG's information, and whether compliance with the June Order was properly required, as detailed in the Contempt Order. Rothenberg claims that, even if he had been CTFG's CFO at the time when the April Order was issued and the Subpoena served (April 29 and May 2, 2016, respectively), he was no longer the CFO after delivering his resignation message on May 19, 2016. The

Bankruptcy Court's June Order held that the original date of service was the only relevant one for purposes of determining Rothenberg's custodial status, and accordingly held that, simply because Rothenberg was CFO on May 2, 2016, he continued to hold CTFG's information in a representative capacity.  This was legal error.

In reaching its holding, the Bankruptcy Court relied on Armstrong v. Guccione, 470 F.3d 89 (2d Cir. 2006), where the trial court had found as a fact that the witness in question remained an employee, and thus a custodian, of the corporation at all relevant times, such that the witness' obligation to respond to a subpoena for corporate documents without recourse to the act-of-production privilege continued notwithstanding a change in certain details of the employment relationship.  Id. at 99.  The Second Circuit's decisions in Saxon Industries and Three Grand Jury Subpoenas, however, teach that an employee who retains corporate information after termination of the employment relationship no longer possesses that information in a representative capacity, and may invoke the act-of-production privilege as to the corporate information.  The Bankruptcy Court acknowledged Rothenberg's resignation email, but did not address the significance of Rothenberg's putative resignation as to custodial status and privilege issues.

Accordingly, the Bankruptcy Court's holding that Rothenberg's employment status as of the original service date of the Subpoena is determinative of his custodian status, and thus determinative of whether he may assert any privilege against compliance with his obligations under the April Order and Subpoena, was error and is reversed.  In light of the need for a threshold determination of whether Rothenberg held any CTFG information in a representative capacity at the time of the June Order, the Court cannot address the parties' arguments as to whether the Contempt Order properly imposed sanctions for Rothenberg's non-

compliance with the June Order.

### CONCLUSION

For the foregoing reasons, the June Order is affirmed in part and reversed in part, and these matters are remanded for further proceedings consistent with this opinion, including a determination as to whether Rothenberg was employed by CTFG as CFO or in any other capacity on and after May 19, 2016, the date on which his resignation email was sent.  If the Bankruptcy Court determines that Rothenberg was not holding CTFG's information in a representative capacity as of that time, the June Order should be vacated as moot, and the Contempt Order vacated as well.

This Memorandum Opinion and Order resolves docket entry no. 17 in case no. 16 CV 4774.  The Clerk of Court is directed to close the above-captioned cases.

SO ORDERED.

Dated: New York, New York
         November 28, 2016

                                                      /s/ Laura Taylor Swain
                                                    LAURA TAYLOR SWAIN
                                                    United States District Judge